UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES
OF AMERICA

v.                                                                  Case No: 8:24-cr-541-KKM-AEP

ANGEL MARES

    Defendant.
_____

## ORDER

Defendants Michel Serrano, Julio Sanchez, and Angel Mares were charged in the Middle District of Florida with conspiracy to transport in interstate commerce stolen vehicles and to sell and possess stolen vehicles, in violation of 18 U.S.C. § 371.[1] Indict. (Doc. 1) at 1–4. Mares moves to transfer the case for trial to the Northern District of California, where he resides and operates a trucking business. Mot. (Doc. 78). The government opposes. Resp. (Doc. 83). Because Mares fails to carry his burden to show that the relevant factors currently favor a transfer, I deny the motion without prejudice.

As relevant here, the government alleges that Serrano and other coconspirators stole 76 vehicles from residences and businesses throughout Florida, altered their Vehicle Identification Numbers (VINs), transported them

---

[1] Serrano was also charged with two counts of interstate transportation of stolen motor vehicles, in violation of 18 U.S.C. §§ 2312 and 2. *Id.* at 4–5.

across state lines, obtained and affixed fraudulent registrations and license plates, and then "sold [the vehicles] at a price well below fair market value." Resp. at 2; *see* Mot. at 3–5. Serrano and others working for him sold 36 vehicles in California, including to alleged coconspirators Sanchez and Mares, both of whom are California residents. Mot. at 4. Purportedly relying on Serrano's representation "that the vehicles were not stolen" and were priced lower because of flood damage, Mares purchased four stolen vehicles, including two pickup trucks for business use, one for personal use, and one for his daughter. *Id* at 4–5.

After a grand jury returned an indictment against all three defendants, Mares was arrested in the Northern District of California. In February 2025, Mares waived personal appearance at his arraignment and entered a plea of not guilty. *See* (Docs. 27, 28, 32). Mares continues to live and operate his trucking business in the Northern District of California and is permitted to travel within the state for work. (Docs. 55, 56). Co-defendant Serrano is detained in the Middle District of Florida and intends to enter a guilty plea, with a hearing set for November 13, 2025. (Doc. 77). Co-defendant Sanchez resides in the Northern District of California but "advise[s] that he takes no possession of the motion to transfer." Mot. at 10–11. Sanchez and Mares are scheduled for a January 2026 trial in the Middle District of Florida. (Doc. 81).

2

"A criminal defendant does not have a constitutional right to be tried in the district encompassing his residence." *United States v. Kopituk*, 690 F.2d 1289, 1322 (11th Cir. 1982) (citation omitted). But under Federal Rules of Criminal Procedure 21(b) and (d), "at or before arraignment or at any other time the court or these rules prescribe," a defendant may move to "transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Even then, "[a] transfer of venue is completely within the discretion of the trial court and the decision to deny a change of venue request will be reversed only for abuse of discretion." *United States v. Smith*, 918 F.2d 1551, 1556 (11th Cir. 1990) (citations omitted).

"The Rule 21(b) determination answers to 'convenience' and the 'interests of justice,' which are informed in turn by the factors enumerated in [*Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243–44 (1964)]." *See United States v. Gotti*, 593 F. Supp. 2d 1260, 1269 (M.D. Fla. 2008). The *Platt* factors, which "are neither exhaustive nor exclusive," include:

> (1) location of [the] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Id.* (quoting *Platt*, 376 U.S. at 243–44). In balancing these factors, "the defendant's concerns about the expense and inconvenience of being tried away from home are ordinarily of little relevance to a motion for a change of venue." *United States v. Bagnell*, 679 F.2d 826, 832 (11th Cir. 1982) (citation omitted).

At this juncture—seven months post-arraignment and two months before trial—neither convenience nor the interests of justice favor transferring this case across the country. True, Mares lives in California and will encounter some expense and disruption to his business if he is tried in Florida. But those factors alone do not justify uprooting the prosecution from this District, especially where the prosecution team, Mares's assigned Federal Defender, and Sanchez's retained counsel are located here. *See* Mot. at 10; Resp. at 7. Likewise, although much of the records are electronic, "[t]he discovery in this case will be, and has been, maintained and produced from the United States Attorney's Office in Tampa." Resp. at 6–7.

As for the location of witnesses, Mares and the government recognize that witnesses from both Florida and California are likely to testify at trial. Mares, for example, "has identified six defense witnesses" in California, including "eyewitnesses to Mr. Mares's and Serrano's interactions, character witnesses, California based law enforcement witnesses, other victims of Serrano's false statements, and if Serrano testifies for the government, potential impeachment witnesses." Mot. at 9. And because Mares is indigent,

4

he notes that the government "will incur expenses for [his] witnesses['] travel and accommodations if this matter is not transferred." Mot. at 16. Taking that into consideration, though, I credit the government's representation that its net burden is higher from transfer. More, the government plans to call "a number of witnesses, including law enforcement, individuals that purchased stolen vehicles, and victims of the thefts" who would travel from Florida to California and stay overnight, generating additional costs. Resp. 5–6. Neither the location of witnesses nor expense to the parties justifies transfer.

To the extent that Mares argues "[a]ny government witnesses residing in Florida are only relevant to the theft and stolen nature of the vehicles," which he does not "intend[] to dispute," he assumes too much. Mot. at 14–15. Rather, "the prosecution is entitled to prove its case by evidence of its own choice[;] . . . a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997). And the government might yet have to prove the thefts because, despite Mares's representation that Sanchez will not dispute that the vehicles were stolen, Sanchez "takes no possession of the motion to transfer." Mot. at 10–11, 14–15. Thus, while the government acknowledges "certain stipulations may . . . reduc[e] the number of witnesses burdened with travelling," a transfer on that basis would be highly speculative based on the available information and absent any filed

5

stipulation. Resp. at 6 n.2; *see United States v. Hoover*, No. 3:21-CR-22(S3)-MMH-MCR, 2022 WL 4017251, at *8 (M.D. Fla. Sept. 2, 2022) (declining transfer where the court lacked "relevant data to assess the relative travel costs for [defendant] and his witnesses").

At this stage, the above considerations regarding witnesses' locations are equivalent to those concerning the location of events, documents, and records. Mares does not dispute that overt acts in furtherance of the conspiracy occurred both in Florida and California, or that documents and records related to those overt acts exist in both locations. He merely claims that the relevant evidence will pertain only to California, where he purchased the stolen vehicles. *See* Mot. at 15 (listing as relevant "bank records, California DMV records, and defendants' business records"). Again, because the government must prove the elements of conspiracy, not limited to Mares's knowledge of whether the vehicles were stolen, it may still "prove its case by evidence of its own choice." *Old Chief*, 519 U.S. at 186–87.

The remaining factors are at best neutral, if not slightly adverse to transfer. Both venues are equally accessible via large, international airports. As for docket conditions, the "Tampa Division [of the Middle District of Florida] has had significantly more criminal and civil filings" than the San Jose Division of the Northern District of California. Mot. at 17. But that reality will not keep this case from progressing. Instead, the parties themselves have

moved to continue trial five times, (Docs. 54, 64, 68, 75, 80), and trial is now set for January 2026. Thus, as "[e]xperience teaches[,] the actions of the parties, including motions, hearings, superseding indictments, interlocutory appeals, pleas, and the like govern the schedule in a matter of this nature more decisively than the condition of the docket." *United States v. Burke*, 607 F. Supp. 2d 1314, 1324 (M.D. Fla. 2009). Finally, expediency disfavors transfer. Trial is rapidly approaching, and absent stipulations limiting the necessary trial evidence or relevant witnesses, the burden and disruption from transfer outweigh any benefit.

Accordingly, the following is **ORDERED:**

1. Defendant Mares's Motion to Transfer the Case for Trial to the Northern District of California (Doc. 78) is **DENIED without prejudice.**

2. Mares may file a renewed motion to transfer no later than **December 1, 2025**. In any renewed motion, Mares must specifically identify the out-of-district witnesses whom he plans to call at trial. Additionally, the defendant must file stipulations to any facts that obviate the government's need to call Florida-based witnesses or present Florida-based evidence at trial.

**ORDERED** in Tampa, Florida, on November 7, 2025.

Kathryn Kimball Mizelle
United States District Judge