# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES
OF AMERICA,

v.                                                    Case No. 8:24-cr-541-KKM-AEP

ANGEL MARES,

      Defendant.

_____

## **ORDER**

Defendants Michel Serrano, Julio Sanchez, and Angel Mares were charged in the Middle District of Florida under 18 U.S.C. § 371 with conspiracy to transport in interstate commerce stolen vehicles in violation of 18 U.S.C. § 2312 and to sell and possess stolen vehicles in violation of 18 U.S.C. § 2313.[1] Indict. (Doc. 1) at 1–4. After I denied his initial motion to transfer venue, Order (Doc. 84), Mares files a renewed motion to transfer the case for trial to the Northern District of California, where he resides and operates a trucking business, Am. Mot. (Doc. 126). The government opposes, Resp. (Doc. 133), and

---

[1] Serrano was also charged with two counts of interstate transportation of stolen motor vehicles, in violation of 18 U.S.C. §§ 2312 and 2. *Id.* at 4–5. Serrano pleaded guilty to the conspiracy count and one count of interstate transportation. *See* (Docs. 97, 103). Serrano was sentenced to 27 months' incarceration. Judgment (Doc. 124).

Sanchez takes no position on the motion, (Doc. 135). For the following reasons, I grant Mares's motion to transfer venue.

This criminal prosecution concerns a conspiracy to sell stolen vehicles. In furtherance of the conspiracy, the defendants or other coconspirators allegedly stole vehicles in Florida, altered their Vehicle Identification Numbers (VINs), transported them across state lines, affixed fraudulent registrations and license plates, and ultimately sold the vehicles below fair market value. *See* Order at 2; Indict. at 2–5. According to Mares, "[i]t is the government's theory of prosecution" that Serrano transported the vehicles "to the Northern District of California where Serrano and others working on his behalf sold the vehicles to, including, but not limited to, Mr. Mares and Sanchez." Mot. (Doc. 78) at 2. Neither Mares nor Sanchez disputes that they purchased vehicles from Serrano. *See id.* at 2–3; Mares Stip. (Doc. 129-1). Instead, "the only issue at trial will be whether the Government can prove beyond a reasonable doubt that Mr. Mares and Mr. Sanchez entered a conspiracy with Michel Serrano . . . and more specifically if they knew the vehicles they purchased . . . w[]ere stolen." Am. Mot at 3. Mares claims that the witnesses and evidence relevant to this issue are in California. *See id.*

"A criminal defendant does not have a constitutional right to be tried in the district encompassing his residence." *United States v. Kopituk*, 690 F.2d 1289, 1322 (11th Cir. 1982) (citation omitted). But under Federal Rule of

Criminal Procedure 21(b) and (d), "at or before arraignment or at any other time the court or these rules prescribe," a defendant may move to "transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Even then, "[a] transfer of venue is completely within the discretion of the trial court and the decision to deny a change of venue request will be reversed only for abuse of discretion." *United States v. Smith*, 918 F.2d 1551, 1556 (11th Cir. 1990) (citations omitted).

"The Rule 21(b) determination answers to 'convenience' and the 'interests of justice,' which are informed in turn by the factors enumerated in [*Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243–44 (1964)]." *See United States v. Gotti*, 593 F. Supp. 2d 1260, 1269 (M.D. Fla. 2008). The *Platt* factors, which "are neither exhaustive nor exclusive," include:

> (1) location of [the] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Id.* (quoting *Platt*, 376 U.S. at 243–44). In balancing these factors, "the defendant's concerns about the expense and inconvenience of being tried away from home are ordinarily of little relevance to a motion for a change of venue." *United States v. Bagnell*, 679 F.2d 826, 832 (11th Cir. 1982) (citation omitted).

3

On the other hand, the location (and significance) of witnesses and events is more important. *See, e.g.*, *United States v. Burke*, 607 F. Supp. 2d 1314, 1323–24 (M.D. Fla. 2009) (granting a motion to transfer where "the lopsided majority of the events pertinent to this prosecution occurred, and the persons likely to testify about those events . . . are situated nearer and more conveniently to New York City than to the Middle District of Florida and to Tampa"); *United States v. Holland*, No. 17-CR-20054, 2017 WL 1433265, at *9 (S.D. Fla. Apr. 24, 2017) (explaining that "[w]itnesses are not fungible" under the second *Platt* factor).

At this stage, convenience and the interests of justice—as informed by the *Platt* factors—favor transferring the remainder of this case to the Northern District of California.

To start, Mares lives and works in California. He will necessarily encounter personal expense and disruption to his trucking business if he is tried in Florida. *See* Am. Mot. at 1; Mot. at 10. Although these factors are among the least important, the government still concedes that they "weigh[] in favor of the defendant." Resp. at 5, 8. Sanchez likewise resides in California, and he has made no representation that trial in his home district would be burdensome. *See* (Doc. 135) at 1 (taking "no position regarding Mr. Mares's Motion"). Sanchez's residence thus supports transfer because "persons who are

4

charged together as co-conspirators should be tried together." *United States v. Francis*, 131 F.3d 1452, 1459 (11th Cir. 1997).

Next, and more importantly, the bulk of the anticipated witnesses reside in the Northern District of California. And those witnesses will testify about events that took place in California, namely Mares's and Sanchez's purchase of stolen vehicles from Serrano. *See* Mot. at 3. As for Mares, he previously represented that he intended to call "eyewitnesses to Mr. Mares's and Serrano's interactions, character witnesses, California based law enforcement witnesses, other victims of Serrano's false statements, and if Serrano testifies for the government, potential impeachment witnesses." Mot. at 9. Mares has since provided a list of these California-based witnesses for the Court's review. *See* (Doc. 127). These witnesses appear "deeply involved in the challenged conduct" and collectively "might be on the witness stand for *days*," increasing the relative expense to those witnesses if they are forced to travel to Florida. *See Holland*, 2017 WL 1433265, at *9.

On the other hand, the government continues to equivocate about its plans to call Florida witnesses, including Serrano. At most, the government mentions calling "the case agents, as well as any remaining victims of the thefts." Resp. at 6. "The United States' decision to provide only generalized representations about the location and significance of trial witnesses does not advance its position." *See Holland*, 2017 WL 1433265, at *9. Rather, as Mares

5

initially argued, "[a]ny government witnesses residing in Florida are only relevant to the theft and stolen nature of the vehicles purchased by Mr. Mares and Sanchez, an issue which neither defendant intends to dispute." Mot. at 14–15. In fact, Mares submits proposed stipulations "that all the vehicles purchased by Mr. Sanchez were stolen from Florida and traveled in interstate commerce from Florida to California." *See* Am. Mot. at 2; Mares Stip. Sanchez plans to stipulate to the same. *See* Am. Mot. at 2. Although the government has not yet signed the stipulations, it concedes that they would "drastically reduce[] the number of witnesses the United States may deem necessary for trial in this case." Resp. at 6; *see id.* (explaining that, if the stipulations are accepted, "it is likely that a larger number of material witnesses will need to travel from California to Florida for trial in this matter"). The location of witnesses and events in question thus favors transfer.

The remaining considerations are largely neutral and do not tip the scale against transfer. First, although "[t]he discovery in this case will be, and has been, maintained and produced from the United States Attorney's Office in Tampa," the government recognizes that "[t]his evidence is electronic, and no additional burden would be placed on either party in entering this evidence into trial whether the trial occurs in the Middle District of Florida or the Northern District of California." *Id.* at 7. Second, each party will incur travel and lodging expenses if trial occurs in their non-preferred district. But the

6

expense to the government might be minimized because, if the case is transferred, "the United States Attorney's Office in the Northern District of California will assist the prosecution team in the Tampa Division." *Id*. at 8. Third, the location of counsel is neutral. Mares is currently represented by the Federal Public Defender's Office in the Middle District of Florida but would presumably be assigned new counsel in the Northern District of California. *See* Mot. at 16. Sanchez's counsel is in the Middle District of Florida. And the prosecution team will likely involve counsel from both Florida and California if the case is transferred. *See id*. at 15–16; Resp. at 8. Fourth, both venues are equally accessible via large, international airports. Fifth, as for docket conditions, "the Tampa Division [of the Middle District of Florida] has had significantly more criminal and civil filings" than the San Jose Division of the Northern District of California. Mot. at 17; *accord* Resp. at 9. Finally, the parties identify no other special element affecting transfer.

On balance, the *Platt* factors favor granting Mares's motion and transferring this case to the district where the remaining witnesses and events in question are located. Accordingly, the following is **ORDERED:**

1. Defendant Angel Mares's Renewed Motion to Transfer the Case for Trial to the Northern District of California (Doc. 126) is **GRANTED.**

2. The clerk is directed to **TRANSFER** this case to the United States District Court for the Northern District of California for the trial of Angel Mares and Julio Sanchez.

3. The clerk is further directed to **CLOSE** the action as against Michel Serrano in the Middle District of Florida.

**ORDERED** in Tampa, Florida, on June 12, 2026.


Kathryn Kimball Mizelle
United States District Judge

8